**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-01178-RBJ

JEFFREY GONZALES,

      Plaintiff,

v.

UNIVERSITY OF COLORADO, through its Board, THE REGENTS OF THE UNIVERSITY
OF COLORADO, a body corporate,

      Defendant.

---

**SCHEDULING ORDER**

---

### 1.  DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

The Scheduling Conference in the above-referenced matter was held on October 12, 2018
at 10:30 am in Courtroom A-902 in the Alfred A. Arraj United States Courthouse, 901 19th
Street, Denver, Colorado 80294, before Judge R. Brooke Jackson.  Appearing for the parties
were Charlotte N. Sweeney and/or Ariel B. DeFazio of Sweeney & Bechtold, LLC, 650 S.
Cherry Street, Suite 700, Denver, Colorado 80246, (303) 865-3733, on behalf of Plaintiff, and
David Temple and/or Don Kaade, Office of University Counsel for the University of Colorado,
1800 Grant Street, Suite 700, Denver Colorado 80203, (303) 860-5691, on behalf of Defendant.

### 2.  STATEMENT OF JURISDICTION

This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 and
specifically under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16.

### 3. STATEMENT OF CLAIMS AND DEFENSES

a.    <u>Plaintiff:</u>  Plaintiff Jeffrey Gonzales worked for Defendant University of Colorado

("CU") as an Assistant Professor at the School of Medicine's Department of Anesthesiology

from August 13, 2014 until he was terminated on June 3, 2016. Plaintiff consistently received

"outstanding" performance ratings and he was never placed on a performance improvement plan

or disciplined during his employment at CU. He was terminated after engaging in protected

activity–making official complaints that he had been discriminated against based on his race

(Hispanic)–and was thereafter retaliated against.

On February 3, 2016, the Department of Anesthesiology's Chair, Vesna Jevtovic-

Todorovic, gave Plaintiff an "outstanding" rating in his yearly performance review and

effusively praised Plaintiff's accomplishments at CU. Chair Todorovic also indicated that

Plaintiff was ready to be promoted.

On March 2, 2016, Plaintiff went to lunch with three colleagues while at a conference in

Vail, Colorado. On March 4, Plaintiff received a screenshot of a text message from one of those

colleagues. In the text message, Dr. Matthew Fiegel, the Director of CU's Acute Pain Service

("APS"), told Plaintiff's colleague that "one of my attendings heard Jeff Gonzales talking shit

about the APS to you. We've had a history of Jeff doing this and we need to address it." Dr.

Fiegel's statement was patently false.  Regardless, in an attempt to avoid conflict with Dr. Fiegel,

Plaintiff decided to remove himself from APS. Plaintiff later showed Chair Todorovic the text

message, and in response, Chair Todorovic accused Plaintiff of being untrustworthy and asked

him in a condescending manner what he "actually did" at the hospital. Whenever Plaintiff

brought up Dr. Fiegel's conduct with Chair Todorovic after this, she treated him in a condescending, hostile, and dismissive manner.

On March 3, Plaintiff expressed his concerns to CU's Ombuds office. The office referred him to Dr. Barry Rumack in the Office of Professionalism. On March 8, Plaintiff's colleague forwarded another text message that he had received from Dr. Fiegel to Plaintiff, which stated "there's now a spot on the APS for a Mexican," referring to Plaintiff. On March 15, Plaintiff reported the inappropriate text message to Will Dewese in CU's Title IX Office. Mr. Dewese recommended that Plaintiff report these concerns to CU's Human Resources Department, which Plaintiff did on March 17. On March 19, Chair Todorovic informed Plaintiff via email that she was "conducting an investigation" into Plaintiff and had determined that he had said disparaging things about APS. She did not provide any specific details to back up these allegations. Furthermore, Chair Todorovic refused to consider Plaintiff for two open medical director positions despite his interest in both and the fact that several of his colleagues strongly recommended him for either role.

On March 23, Plaintiff met with Dr. Rumack and described these discriminatory and retaliatory events. Dr. Rumack acknowledged that these were "serious offenses" that CU could not tolerate and promised to investigate; however, in a subsequent meeting, Dr. Rumack stated that he could only facilitate a mediation between Plaintiff and Chair Todorovic.

In the second week of April 2016, Plaintiff again contacted CU's HR Department by phone, expressing the fact that he had not received a promised promotion and that his work environment had become increasingly stressful after he had reported discriminatory conduct superiors. On May 18, another employee in CU's Title IX Office, Karey Duarte, told Plaintiff

that she was going to present the findings of her investigation to Chair Todorovic. In response to Plaintiff's concern that he would be further retaliated against, Ms. Duarte merely laughed.

In April and/or May 2016, Chair Todorovic replaced the medical director of the Lone Tree Surgery Center with Melanie Donnelly despite previous indications that Plaintiff would get the promotion. When Plaintiff asked Chair Todorovic why he was not named the medical director, she dismissed his inquiry and again asked what he "actually did" at CU. The Chair then claimed that she had received complaints from a surgeon and a patient against Plaintiff, neither of which had any basis or had been brought to Plaintiff's attention previously. .

Chair Tororovic terminated Plaintiff on June 3, 2016 (effective June 30), citing performance issues. On February 8, 2017, Plaintiff filed charge of discrimination number 541-2017-01466 with the U.S. Equal Employment Opportunity Commission, alleging that CU discriminated against him based on his race and national origin, and retaliated against him in violation of Title VII, as amended. Plaintiff now brings this action asserting that he was retaliated against for objecting to illegal discrimination in violation of Title VII.  He is seeking damages as described in section 5.a. below.

b.    Defendant:

The University denies that Dr. Gonzalez's protected conduct was the but-for cause of any adverse action the University took against him.  Rather, the University had legitimate, non-discriminatory reasons for terminating Dr. Gonzalez's employment.

## 4.   UNDISPUTED FACTS

The following facts are undisputed:

1.      Plaintiff Dr. Jeffrey Gonzales is a resident of the State of Colorado.

2.      Defendant University of Colorado ("CU") is a state institution of higher education established and regulated by Article IX, § 12 and 13, Colorado Constitution, and State statutory law, C.R.S. § 23-20-101, *et seq.*

3.      CU is covered by the definition of "employer" under Title VII.

4.      CU is engaged in the business of higher education.

5.      CU operates the School of Medicine on the Anschutz Medical Campus in Aurora, Colorado.

6.      Plaintiff is a board-certified anesthesiologist.

7.      Plaintiff worked for CU as an Assistant Professor at the School of Medicine's Department of Anesthesiology from August 13, 2014 until he was terminated on June 3, 2016.

8.      Plaintiff was recruited for the position at CU by the former Chair of the Department of Anesthesiology, Tom Henthorn.

9.      In January 2016, CU replaced former Chair Henthron with Dr. Vesna Jevtovic-Todorovic.

10.     On February 8, 2017, Plaintiff filed charge of discrimination number 541-2017-01466 with the U.S. Equal Employment Opportunity Commission in which he alleged that CU discriminated against him based on his race and national origin and retaliated against him in violation of Title VII.

11.    On February 14, 2018, the Civil Rights Division of the U.S. Department of Justice issued Plaintiff a notice of right to sue with respect to charge of discrimination number 541-2017-01466.

## 5.  COMPUTATION OF DAMAGES

a.  <u>Plaintiff:</u>

Due to his unlawful termination, Plaintiff has incurred approximately $800,000 in gross economic losses to date. This includes: (1) about $775,000 in back pay, which assumes that he would have received modest annual increases of 3%, and takes into account the value of the outstanding fringe benefits that he received as a CU employee (estimated at 35% of his salary) less what Plaintiff has earned as a result of reasonable mitigation efforts; (2) increased medical insurance premiums of approximately $810 per month; (3) approximately $1,722 in out-of-pocket medical costs; and (4) annual fees of $7,914 for malpractice insurance and DEA registration, which CU paid during Plaintiff's employment and for which he has been responsible since his termination.

Plaintiff's economic losses are continuing in nature, as he has not obtained equivalent employment, despite his best mitigation efforts. Because CU is the only academic hospital of its kind in Colorado, Plaintiff can no longer work as a Professor of medicine.

Defendant's actions have caused significant emotional harm to Plaintiff and he will therefore be seeking an award of compensatory damages in the maximum amount allowed by law.  In addition, he will ask the Court for injunctive relief and declaratory relief, equitable relief in the form of ordered training and discipline, reinstatement or front pay, and an award of attorney fees and costs.

      b.  <u>Defendant</u>:  None

## 6. REPORT OF PRE-CONFERENCE DISCOVERY AND MEETING UNDER FED.R.CIV.P. 26(f)

      a.      Date of Rule 26(f) meeting: Thursday, September 13, 2018 at 1:30 pm.

      b.      Names of each participant and party he/she represented: Ariel B. DeFazio and Amanda E. Bauer of Sweeney & Bechtold, LLC for Plaintiff and David Temple and Don Kaade for Defendant.

      c.      Rule 26(a)(1) disclosures will be made on or before October 11, 2018.

      d.      Proposed changes, if any, in timing or requirement of disclosures under Fed.R.Civ.P. 26(a)(1):  The parties propose to make Rule 26 (a)(1) disclosure on or before October 11, 2018.

      e.      Statement concerning any agreements to conduct informal discovery: None.

      f.      Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit number system to the extent practicable: The parties agree to use a unified exhibit numbering system.  The parties also agree to permit service of discovery requests and responses by e-mail only, unless a hard copy of such discovery requests or responses is expressly requested.

      g.      Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form:  The parties anticipate that disclosure or discovery regarding their claims or defenses will involve some electronically stored information, primarily in the form of e-mail communications.  The parties agree to produce all electronically stored information in a PDF file format, unless otherwise

impracticable. The parties agree to confer regarding the production of information in Native

format and whether search protocols – including specifying search terms and custodians – are

required in response to requests for production that call for e-mail correspondence.  Further, to

avoid discovery disputes relating to electronic discovery, the Parties agree to attempt to resolve

any such disputes in accordance with the U.S. District Court for the District of Colorado's

Guidelines Addressing the Discovery of Electronically Stored Information (June 2015).

h.      Statement summarizing the parties' discussions regarding the possibilities for

promptly settling or resolving the case: The parties have discussed possible settlement, no

settlement appears likely at this point.

## 7.  CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8.  DISCOVERY LIMITATIONS

a.      Neither party proposes to modify the presumptive number of depositions or

interrogatories contained in the Federal Rules.

b.      The parties propose no modifications to the length of depositions established in

the applicable Federal and local rules.

c.      The parties may propound 25 requests for admissions and 25 requests for

production to each opposing party, absent agreement of the other party or leave of court.

d.      Other Planning or Discovery Orders: Because of the likelihood that records

containing financial, medical, and other confidential information will be produced during

discovery, the parties anticipate filing a proposed Protective Order and will ensure that such an

order complies with page 2 of the Court's Practice Standards.

### 9.   CASE PLAN AND SCHEDULE

a.      Deadline for Joinder of Parties and Amendment of Pleadings: November 26, 2018.

b.      Discovery Cut-off:  April 12, 2019.

c.      Dispositive Motion Deadline:  May 27, 2019.

d.      Expert Witness Disclosure:

    1.   Plaintiff may call an economic expert.  Plaintiff reserves the right to supplement this disclosure.  Defendant will decide on an expert(s), during the course of discovery

    2.   The parties shall be permitted to designate three expert witnesses per side, including rebuttal experts.

    3.   The parties shall designate all affirmative experts and provide opposing counsel and any pro se parties with all information specified in Fed.R.Civ.P.26(a)(2) on or before February 15, 2019.

    4.   The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed.R.Civ.P.26(a)(2) on or before March 22, 2019.

e.      Identification of Persons to Be Deposed:

    1.   Plaintiff:

        i.      Dr. Vesna Jevtovic-Todorovic (5-7 hours)

        ii.     Dr. Matthew Fiegel (2-4 hours)

        iii.    Dr. Barry Rumack (2-3 hours)

        iv.     Karey Duarte (2-3 hours)

    2.    Defendant:

        i.     Plaintiff

        ii.    Other persons identified during discovery

        iii.   Plaintiff's expert(s)

f.    Deadline for Interrogatories:  45 days before the discovery cut-off.

g.    Deadline for Requests for Production of Documents and/or Admissions: 45 days before the discovery cut-off.

## 10. DATES FOR FURTHER CONFERENCES

a.    Status conferences will be held in this case at the following dates and times:

_____.

b.    A final pretrial conference will be held in this case on_____ at _____ o'clock.  A Final Pretrial Order shall be prepared by the parties and submitted to the Court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

a.    There are no other discovery or scheduling issues on which counsel were unable to reach an agreement

b.    The parties anticipate a 5-day jury trial.

c.    The proceedings in this case are most practically conducted in the District Court's Denver facilities.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.L.CivR6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

The Scheduling Order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado this __day of _____, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

APPROVED:

s/Ariel B. DeFazio _____            s/David Temple _____
Charlotte N. Sweeney                          David Temple
Ariel B. DeFazio                              Don Kaade
Sweeney & Bechtold, LLC                       University of Colorado
650 S. Cherry St., Ste. 700                   Office of University Counsel – Litigation
Denver, CO 80246                              1800 Grant St., Ste. 700
(303) 865-3733                                Denver, CO 80203
                                              (303) 860-5691

Attorneys for Plaintiff                       Attorneys for Defendant