IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:18-cv-01178-RBJ

JEFFREY GONZALES,

     Plaintiff,

v.

UNIVERSITY OF COLORADO, through its Board, THE REGENTS OF THE UNIVERSITY
OF COLORADO, a body corporate,

     Defendant.

## ORDER ON MOTION IN LIMINE

Defendant moves in limine to exclude the testimony of five potential plaintiff's witnesses under Fed. R. Evid. 404(b) and 405.  The motion is granted in part and denied in part.

### I.  BACKGROUND

The claims and defenses in this case were set forth in detail in this Court's recent order denying defendant's motion for summary judgment.  ECF No. 50.  For present purposes it is sufficient to note that the plaintiff is an Hispanic gentlemen who formerly was an Assistant Professor and anesthesiologist at the University of Colorado's School of Medicine in the Department of Anesthesiology.  He claims he was terminated in retaliation for his complaints about unlawful discrimination in the Department, and that the Department Chair, Dr. Vesna Todorovic, has used an unrelated incident involving Dr. Gonzalez (which he also claims was falsely reported) as a pretext for the termination.

1

The motion seeks to preclude the testimony of Drs. Mandell, Puskas, Szolnoki, Galinkin and Strauss.  The challenged testimony is that summarized in affidavits of those doctors, filed as Exhibits 2 through 6 to the motion.  ECF Nos. 47-2 through 47-6.

During the Trial Preparation Conference on November 22, 2019, I informed the parties that although plaintiff's response to the motion and defendant's reply had not yet been filed, my tentative inclination based solely on defendant's motion and the affidavits of the five individuals was to grant the motion as to Drs. Puskas, Szolnoki and Galinkin, because their affidavits concerned alleged mistreatment of them but not that it was based on unlawful discrimination. However, my tentative inclination was to deny the motion as to Dr. Mandell, who described discriminatory conduct by Dr. Todorovic based on her age, and as to Dr. Strauss, who described what could be viewed as discriminatory conduct by Dr. Todorovic based on her gender.  Since that time I have received and reviewed plaintiff's response to the motion, ECF No. 52, and defendant's reply, ECF No. 54.

In his response to the motion Dr. Gonzales states that he first brought his complaint of national origin discrimination to the attention of Dr. Barry Rumack, the Director of CU's Office of Professionalism.  ECF No. 52 at 2.  Dr. Rumack, contrary to the confidentiality that was supposed to be given to such complaints but consistently with his treatment of complaints filed by Dr. Mandell and Dr. Puskas, disclosed the substance of the complaint to Dr. Todorovic without his permission.  Dr. Gonzales also indicates that he anticipates that Dean John J. Reilly, Jr., who approved his termination, will deny, as he did in his deposition, that he had received any complaints of discrimination by Dr. Todorovic.  Dr. Gonzales states that Drs. Mandell, Strauss and Galinkin can contradict that testimony, if given.  In addition, plaintiff anticipates that Dean Reilly will testify that the only complaints about Dr. Todorovic he received were complaints that

employees' input was not being considered seriously.  The three listed doctors, plus Dr.

Szolnoki, can allegedly contradict that testimony.  *Id.* at 3.

In its reply defendant argues that testimony of other employees "may be relevant to 'the

employer's discriminatory intent if the testimony establishes a pattern of retaliatory behavior or

tends to discredit the employer's assertion of legitimate motives.'"  ECF No. 54 at 1 (citing and

quoting *Coletti v. Cudd Pressure Control,* 165 F.3d 767, 776 (10th Cir. 1999)).  Defendant then

applied that standard to each of the five potential witnesses, arguing that none of them should be

permitted to testify.  Specifically,

- Dr. Mandell: Her complaint of age discrimination is "fundamentally dissimilar" to Dr.

  Gonzales's complaint of national origin discrimination, and it does not therefore establish

  a "pattern of retaliatory behavior" or "discredit" defendant's assertion of a legitimate,

  non-discriminatory basis for terminating Dr. Gonzales.  Also, most of her allegations

  occurred more than a year after Dr. Gonzales was terminated and are too distant in time

  to be relevant.  Finally, the testimony regarding Dean Reilly is not relevant to the alleged

  discriminatory intent of Dr.; Todorovic.  *Id.* at 1-3.

- Dr. Strauss: She did not complain about discrimination or retaliation to the Human

  Resources Department.  Her testimony that Dr. Todorovic did question whether she was a

  good fit as a leader due to her pregnancy is not relevant to whether there was a pattern of

  unlawful discrimination or retaliation.  Her incidents, like those of Dr. Mandell, occurred

  well after Dr. Gonzales was terminated and are too temporally distant to be relevant.

  Further, Dr. Strauss's complaints concern persons other than Dr. Todorovic.  *Id.* at 3-4.

3

- Drs. Mandell and Puskas: They have no personal knowledge that Dr. Rumack disclosed anything to Dr. Todorovic.  Moreover, testimony rebutting Dr. Rumack's assertions that he keeps matters confidential "is precisely what Rule 404(b) prohibits." *Id.* at 4.

- Drs. Mandell, Szolnoki and Galinkin: Dean Riley has not denied that he was aware of complaints about Dr. Todorovic's management style, so even if such complaints were relevant, it would not be proper rebuttal testimony.  *Id.* at 5.

- All this testimony should be excluded under Rule 403 because it could provoke the jury to decide the case based upon Dr. Todorovic's management style, not because of unlawful discrimination by the defendant.  *See id.* at 5.

## ANALYSIS AND CONCLUSIONS

At the outset I remind the parties that a court's in limine determination that certain evidence is probably admissible or inadmissible is not necessarily final.  It is subject to review and modification in the context of the evidence and arguments at trial.  Also, the parties should keep in mind that if a party or its counsel "opens the door" to evidence that was otherwise deemed inadmissible, the evidence might thereby become admissible.  I also note that nothing in this order is intended to prevent a party from offering testimony that directly contradicts facts testified to by another witness.

The response and reply have done little to change the Court's initial impressions, which were based solely on the affidavits of the five witnesses.  I continue to believe that Dr. Mandell's testimony about Dr. Todorovic's alleged discriminatory comments relating to her age are probably admissible.  They arguably go to Dr. Todorovic's character, but they also tend to show discriminatory motive or intent, thus passing muster under Rule 404(b).  Obviously, age discrimination and national origin discrimination are different.  But discrimination based on age,

national origin, race, gender or religious preference are so well known to be unlawful that

discrimination based on one of these categories has at least some tendency to show a motive or

intent to mistreat employees for discriminatory reasons.  I conclude that the probative value of

such evidence is not substantially outweighed by unfair prejudice.  If one practices or tolerates

unlawful discrimination, he will not be heard to complain that admission of evidence of such

practices or toleration is unfair.

The proposed testimony of Dr. Strauss is a closer call.  According to Dr. Strauss, on

March 10, 2017 Dr. Todorovic suggested that Dr. Strauss collect feedback from her team more

regularly, and that a Chief Anesthetist evaluation process should be put in place.  Then, in Dr.

Strauss's words, Dr. Todorovic said "because I was pregnant and going on maternity leave I

should consider whether leadership is a 'good fit' for me and that maybe I should 'focus on [my]

family.'"  This statement, if made, was not necessarily malicious.  However, it made

assumptions about Dr. Strauss's priorities/family and arguably attempted to impose them on Dr.

Strauss, especially so if Dr. Todorovic's underlying belief was that becoming a mother meant

that she was less qualified to take a leadership role, or that she would have insufficient time or

desire to be an effective leader.  I find that the statement was potentially indicative of

discriminatory motive or intent, and that the jury should be permitted to consider it.

I am not persuaded that Dr. Todorovic's statements to Dr. Mandell or to Dr. Strauss were

so remote in time as to become irrelevant.  If one has the inclination to discriminate or tolerate

discrimination based on age, gender, national origin, or other suspect categories, I am not

convinced that the passage of a year between incidents is dispositive.  However, I do find that

except for the statements noted above, the remainder of Dr. Strauss's affidavit does not present

evidence probative of discrimination.

I remain unconvinced that the testimony of Drs. Puskas, Szolnoki and Galinkin as described in their affidavits is admissible in this case.  The affidavits raise questions about Dr. Todorovic's management style and her treatment of others in the Department.  However, they do not address unlawful discrimination.  So far as I am aware, Dr. Gonzales was an "at will" employee.  If so, he could be terminated without cause so long as it was not based on unlawful discrimination or retaliation.  This is not to say that these individuals cannot testify at all, such as to rebut specific testimony of defense witnesses.

## ORDER

Defendant's motion in limine, ECF No. 47, is GRANTED IN PART AND DENIED IN PART as explained in this order.

DATED this 5th day of December, 2019.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge