INSTRUCTION 1

I will now summarize the claims and defenses of the parties.

The University operates a medical school located on the Anschutz campus in Aurora, Colorado. The medical school employs doctors who work at several clinics and hospitals, including University of Colorado Hospital on the Anschutz campus.

In August 2014, the University hired Dr. Gonzales to work at the University of Colorado School of Medicine as an anesthesiologist and Assistant Professor. In those roles, Dr. Gonzales provided care to patients and provided training to the University's doctors in training, who are called residents. On June 3, 2016, CU terminated Dr. Gonzales.

Dr. Gonzales claims that the University retaliated against him after he expressed concerns to the University about discrimination based on his national origin both in denying him consideration for two promotions and ultimately terminating his employment. Dr. Gonzales claims that the University's explanation for why it terminated him was simply pretext for retaliation. Specifically, Dr. Gonzales claims that the University's explanation for why it terminated him should not be believed for several reasons, including that: he had been well-received by colleagues, residents, and superiors until he voiced his concerns about discrimination; the University's reasons for terminating him have been inconsistent and have changed over time; the University did not actually investigate Dr. Gonzales's concerns that he was being discriminated and retaliated against or a resident's complaint about Dr. Gonzales; that the University punished Dr. Gonzales more severely than another physician who engaged in similar or more serious conduct; the testimony of a number of the University's witnesses is not credible; and Dr. Todorovic has retaliated against other staff under her supervision.

*Final Instructions Given*

1   *[signature] R. Brooke Jackson*
    *12/19/19*

The University maintains that all of Dr. Gonzales's accusations related to his termination are false. The University denies that it retaliated against Dr. Gonzales because he complained that one of his co-workers sent a text message to a friend (a non-University physician) that said there was a spot on Acute Pain Service for a "Mexican." The University asserts that Dr. Gonzales was not considered for the promotions because he abruptly quit the Acute Pain Service breaching his contract with the University. The University asserts that it fired Dr. Gonzales because he directed a resident physician whom he was training to review an obscene description of a sexual assault in an on-line publication that had no legitimate academic purpose. Other incidents of misconduct, such as abruptly quitting the Acute Pain Service team and failing to properly document a medical procedure in a patient's record, reinforced this decision. There is no inconsistency, as these reasons were communicated to Dr. Gonzales at the time of his termination. The University also asserts that neither Dr. Todorovic, nor Dean Reilly knew about Dr. Gonzales's complaint when they decided to terminate Dr. Gonzales, so his complaint could not possibly have been any part of their reason to terminate him.

INSTRUCTION NO. 2

The parties have stipulated to certain facts. This agreement makes the presentation of any evidence to prove this fact unnecessary. The agreement means that you must accept this fact as true.

In this case, the parties have stipulated to the following facts:

1. Plaintiff Dr. Jeffrey Gonzalez is a resident of the State of Colorado.

2. Defendant CU is a state institution of higher education established and regulated by Article IX, §§ 12 and 13, Colorado Constitution, and State statutory law, C.R.S. § 23-20-101, et seq.

3. CU is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended.

4. CU is engaged in the business of higher education.

5. CU operates the School of Medicine on the Anschutz Medical Campus in Aurora, Colorado.

6. Plaintiff is a board-certified anesthesiologist.

7. Plaintiff worked for CU as an Assistant Professor at the School of Medicine's Department of Anesthesiology from August 13, 2014 until he was terminated on June 3, 2016.

8. Plaintiff was recruited for the position at CU by the former Chair of the Department of Anesthesiology, Tom Henthorn.

9. In January 2016, CU replaced former Chair Henthorn with Dr. Vesna Jevtovic-Todorovic.

INSTRUCTION 3

This case should be considered and decided by you as a dispute between persons of equal standing in the community, of equal worth, and holding same or similar stations in life. Although not an individual person, Defendant the University is entitled to the same fair trial as a private individual. All persons, including universities, stand equal before the law and are to be treated as equals. You must not be influenced by sympathy, bias, or prejudice for or against any party in this case.

Defendant CU is a university and may act only through natural persons who are its agents or employees. Generally, any agents or employees of a university may bind the university by their acts and declarations made while acting within the scope of their authority delegated to them by the university or within the scope of their duties as employees of the university.

An employee is acting within the scope of his duties if he is doing work that is assigned to him by the University or is work proper, usual, customary, or necessary to accomplish the assigned work.

INSTRUCTION NO. 4

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. In considering the testimony of any witness, you may take into account many factors, including the witness' opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness' memory; the witness' appearance and manner while testifying; the witness' interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness' testimony; and the reasonableness of the witness' testimony in light of all the evidence. The weight of the evidence does not necessarily depend upon the number of witnesses who testify. The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.

A witness may be discredited or impeached by contradictory evidence; or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony. You may, in short, accept or reject the testimony of any witness in whole or in part. If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars and you may reject all the testimony of that witness or give it such credibility as you may think it deserves. An act or omission is "knowingly" done if voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

INSTRUCTION NO. 5

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to and all facts and events that may have been judicially noticed.

Statements and arguments by the lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence. However, when the lawyers on both sides stipulate or agree on the existence of a fact, unless otherwise instructed, you must accept the stipulation and regard that fact as proved.

Any evidence to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.

Any finding of fact you make must be based on probabilities, not possibilities. You should not guess or speculate about a fact.

The law does not require any party to call as witnesses every person who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

INSTRUCTION NO. 6

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses. You may draw from the facts you find have been proved such reasonable inference as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

Generally speaking, there are two types of evidence that are presented during a trial – direct evidence and circumstantial evidence. "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. "Circumstantial evidence" is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

INSTRUCTION NO. 7

Plaintiff has the burden of proving his claim by a preponderance of the evidence. To prove something by a "preponderance of the evidence" means to prove that it is more probably true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case. Nor does it require proof "beyond a reasonable doubt" which is a stricter standard that applies in criminal cases.

If you find that the evidence as to a claim or defense weighs so evenly that you are unable to say that there is a preponderance of the evidence on either side, you must reject that claim or defense.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Those of you who have participated in criminal cases will have heard of "proof beyond a reasonable doubt." The standard of proof in a criminal case is a stricter standard, requiring more proof than a preponderance of evidence. The reasonable doubt standard does not apply to a civil case and you should put that standard out of your mind.

INSTRUCTION NO. 8

Plaintiff's claim of retaliation is brought under a federal law known as Title VII of the Civil Rights Act of 1964, as amended, often called Title VII.

Title VII is designed to assure equality of employment opportunities and ensure that all persons enjoy full and adequate protection against employment discrimination. The anti-retaliation protection in Title VII provides that it is unlawful for an employer to retaliate against an individual because he, in good faith, opposed what he believed was discriminatory or retaliatory employment practices or because he has made a charge, testified, assisted or participated in any manner in investigation, proceeding, or hearing governed by Title VII.

Plaintiff claims Defendant CU retaliated against him because he opposed a practice made unlawful by Title VII of the Civil Rights Act of 1964.  To establish a claim of retaliation, Plaintiff must show all of the following by a preponderance of the evidence:

1.      Plaintiff engaged in activity protected by Title VII;

2.      Plaintiff was subjected to a materially adverse employment action at the time, or after, the protected activity took place; and

3.      Defendant CU would not have taken the materially adverse employment action but for Plaintiff's protected activity.

If you find that Plaintiff has proved all three of these elements, your verdict should be for Plaintiff.  If, on the other hand, Plaintiff has failed to prove any one of these elements, your verdict should be for the University.

INSTRUCTION NO. 9

A "materially adverse" action is any action by the employer that is likely to discourage a reasonable worker in Plaintiff's position from exercising his rights under Title VII.

In this case, Plaintiff claims that Defendant CU took the following adverse actions against him: denying him consideration for two promotions and ultimately terminating his employment.

INSTRUCTION 10

To prove that the University would not have taken materially adverse employment action against Plaintiff but for Plaintiff's activity protected under Title VII, Plaintiff does not need to show that his protected activity was the only reason for his termination. Instead, Plaintiff needs to show that even if other factors contributed to the decision to terminate him, he would not have been terminated had he not engaged in protected activity.

INSTRUCTION NO. 11

Plaintiff's opposition to a practice he believed is unlawful under Title VII is protected activity. "Activity protected under Title VII of the Civil Rights Act of 1964" means filing a complaint based on a good faith, reasonable belief that the University engaged in an unlawful employment practice against Plaintiff based on his national origin. Plaintiff had a "reasonable" belief if a reasonable person would, under the circumstances, believe that the University engaged in an unlawful employment practice against Plaintiff because of his national origin.

Protected activity can range from voicing complaints to superiors to filing a formal charge. In this case, Plaintiff asserts that he engaged in the following protected activities: Plaintiff complained that he was being discriminated against based on national origin to CU's Human Resources Department, Office of Equity, and Office of Professionalism. Plaintiff continued to express concerns about discrimination and retaliation to the Office of Professionalism.

Plaintiff's activities in opposing a practice that he believed is unlawful under Title VII is protected activity even if it is based on a mistaken but reasonable good faith belief that Title VII has been violated.

INSTRUCTION NO. 12

"Unlawful employment practice" means to fail to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, or to deprive any individual of employment opportunities or otherwise adversely affect his or her status as an employee because of such individual's race, color, religion, gender, or national origin.

INSTRUCTION NO. 13

Plaintiff claims that Defendant CU's stated reasons for its adverse employment actions are not the true reasons, but instead are a pretext (an excuse) to cover up for retaliation. If you do not believe one or more of the reasons Defendant CU offered for unfairly scrutinizing Plaintiff's performance, denying him promotions, and terminating him, then you may, but are not required to, infer that retaliation was a factor that made a difference in Defendant CU's decision. Plaintiff need not disprove every reason stated by Defendant CU in order to prove pretext.

Plaintiff may attempt to show that Defendant CU's stated reasons for its decisions are pretextual (not the true reason) in any one of several ways. Some examples of ways (although these are not the only ways) in which Plaintiff contends that Defendant CU's stated reasons are pretext are:

- Evidence of how CU treated Plaintiff in contrast with another attending physician who had not complained about discrimination;

- Evidence of how CU treated other workers who complained about discrimination;

- Evidence that Defendant CU offered inconsistent reasons for terminating Plaintiff;

- Evidence of inconsistencies in Defendant CU's review and investigation of Plaintiff's complaints of discrimination; and

- Evidence that any one of Defendant CU's stated reasons for the decisions affecting Plaintiff are false, contradictory, implausible, or not worthy of credence.

In determining whether Defendant CU's stated reasons for the decisions are genuine or pretextual, you may consider any or all of these factors. If you find pretext, you may, but are not required to infer that retaliation was a factor that made a difference in Defendant CU's treatment

14

of Plaintiff. Defendant contends that the stated reason it has given for the termination of the

Plaintiff is not a pretext but is the actual reason.

INSTRUCTION NO. 14

You are not to consider whether the University's reason for termination of the Plaintiff showed bad or mistaken judgment unrelated to retaliation for protected activity. You are also not to consider the University's wisdom. You may consider, however, whether the University's reason is merely a cover-up for retaliation.

INSTRUCTION NO. 15

The instructions that follow govern how you should go about awarding damages for Plaintiff's claim in this case. The fact that I am instructing you as to the proper measure of damages should not be considered as indicating any view of mine as to which party is entitled to a verdict in this case. Instructions as to the measure of damages are given for your guidance only in the event you find in favor of Plaintiff on his claim in accordance with the other instructions.

Difficulty or uncertainty in determining the precise amount of any damages does not prevent you from deciding an amount. You should use your best judgment based on the evidence. You may not award damages based on speculation or guesswork. On the other hand, the law does not require that Plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

INSTRUCTION NO. 16

If you find that Defendant CU unlawfully retaliated against Plaintiff on the basis of his

protected activity in violation of Title VII, then you must determine an amount that is fair

compensation for Plaintiff's losses. The damages that you award must be fair compensation, no

more and no less. In determining the amount of any damages that you decide to award, you

should be guided by dispassionate common sense. You must use sound discretion in making an

award of damages, drawing reasonable inferences from the facts in evidence. Remember, you

must not engage in any speculation, guess, or conjecture and you must not award any damages

by way of punishment or through sympathy.

The first type of compensation is back pay, which reasonably compensates Plaintiff for

any lost wages and benefits, taking into consideration any increases in salary and benefits that he

would have received had he not been retaliated against. You must reduce any award by the

amount of pay and benefits that Plaintiff actually earned from other employment during this

time. As a part of economic damages, you may also reimburse Plaintiff for the value of other

out-of-pocket losses or expenses, including expenses for malpractice insurance premiums, annual

fees for malpractice insurance and DEA registration, and past medical bills.

The second type of compensation is non-economic damages for injuries that Plaintiff

proved were caused by Defendant CU's wrongful conduct. You may award non-economic

damages for any emotional distress, pain, suffering, inconvenience, mental anguish,

embarrassment, humiliation, and damage to reputation that Plaintiff experienced as a

consequence of the wrongful conduct. No evidence of monetary value of such intangible things

as pain and suffering has been, or need be, introduced into evidence. There is no exact standard

18

for setting the compensation to be awarded for these elements of damages. Any award you make should be fair in light of the evidence presented at trial.

If you find Plaintiff has proved his claim of retaliation but has failed to prove he suffered any damages, you must award Plaintiff the nominal amount of $1.00.

INSTRUCTION NO. 17

The fact that Plaintiff filed this lawsuit is not evidence that the University did anything wrong. The fact that Plaintiff complains he has been damaged is not evidence that he has been damaged or that the University violated the law. You cannot say, "Well, there must be something wrong here or the case would not be in court." This would be improper.

INSTRUCTION NO. 18

The Bailiff will now escort you to the jury room.  You must follow these rules while deliberating and returning your verdict:

First, when you go to the jury room, you must select a foreperson.  The foreperson will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury and try to reach agreement.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should.  But do not make a decision simply because other jurors think it is right, or simply to reach a verdict.  Remember at all times that you are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

Your verdict must be based solely on the evidence and on the law I have given to you in these instructions.  The verdict must be unanimous.  Nothing I have said or done is intended to suggest what your verdict should be – that is entirely for you to decide.