**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  1:18-cv-01178-RBJ

JEFFREY GONZALES,

      Plaintiff,

v.

UNIVERSITY OF COLORADO, through its
Board, THE REGENTS OF THE UNIVERSITY
OF COLORADO, a body corporate,

      Defendant.

---

**DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

---

The University is entitled to judgment under F.R.C.P. 50 because Plaintiff's complaint about a colleague's isolated text message, sent not to Plaintiff but to his colleague's friend, does not constitute protected opposition to discrimination as a matter of law.

Plaintiff began his employment as an Assistant Professor in the School of Medicine Department of Anesthesiology in August 2014.  Trial Ex. A.  During the first eighteen months of his employment, Plaintiff made no reports or complaints of discrimination against him based on his race or national origin.

His offer letter required that he join the Acute Pain and regional service (APS).  Trial Ex. A, p. 2.  In early March 2016, Plaintiff attended a conference in Vail.  While there, one of Plaintiff's colleagues who was also attending the conference, Dr. Kyle Marshall, overheard Plaintiff speak disparagingly about the APS to Dr. Henri Acosta, a physician not affiliated with the University. Dr. Marshall reported it to the APS leader, Dr. Matt Fiegel.  Dr. Fiegel sent a text

to Dr. Acosta – who was a friend of Dr. Fiegel's – asking whether it was true.  Trial Ex. F, p. 1.

Unbeknownst to Dr. Fiegel, Dr. Acosta forwarded the text message to Plaintiff.  Trial Ex. G, p. 1.  Within one hour, Plaintiff decided to quit the APS.  He emailed his supervisor, Dr. Vesna Todorovic, the Chair of the Department of Anesthesiology, stating, "I'm removing myself as an attending from the Acute Pain and regional Services.  If this is an issue with my employment please let me know asap."  Trial Ex. 9.  The Chair followed up with him the next business day and expressed her extreme displeasure at the abrupt and discourteous manner by which Plaintiff had quit a required a job duty.  Plaintiff got worried; he believed his job was in jeopardy.

Shortly after Plaintiff quit the APS, Dr. Fiegel sent another text message to Dr. Acosta, stating: "There's now a spot on the APS for a Mexican. You interested??" (the "Mexican text").  Trial Ex. 16.  Dr. Acosta replied, "The U can't afford me[.]"  Dr. Acosta, once against unbeknownst to Dr. Fiegel, forwarded that text exchange to Plaintiff.  Trial Ex. 15.

The next day, Plaintiff contacted the School of Medicine's Office of Professionalism and made an appointment.  He subsequently met with Dr. Barry Rumack at the Office of Professionalism, where he complained about the "Mexican text."  He also spoke on the phone with the University's Office of Equity and with the Human Resources Department, where he discussed his meeting with the Chair after he quit the APS and also brought up the "Mexican text."  Trial Exs. H, D, 17.

Plaintiff was terminated on June 3, 2016 because of a resident's report that Plaintiff, while teaching a procedure for a nerve block, directed the resident to Urban Dictionary to look up definitions of lewd sexual acts and rape.  As the Chair testified during the trial, Plaintiff

quitting his required job duties at the APS (Trial Ex. 9) and failing to document a procedure in patient's records (Trial Ex. U) contributed to and reinforced that decision.

Plaintiff sued, claiming he was terminated in retaliation for reporting the "Mexican text." Am. Compl. ¶¶ 44, 45, 46.  He did not allege, nor did he present any evidence at trial, that there was any discrimination against him at the University based on his race or national origin.  The sole basis for his complaints of discrimination to the Office of Professionalism, Office of Equity, and Human Resources was the "Mexican text."

At the close of Plaintiff's evidence, the University moved for judgment as a matter of law under F.R.C.P. 50(a) on the basis that Plaintiff had failed to come forward with legally sufficient evidence to allow a reasonable juror to conclude that he had engaged in protected opposition to discrimination in the workplace.  The Court denied the University's motion.  The University respectfully renews its motion under F.R.C.P. 50(b).  Because, as a matter of law, Plaintiff's complaints about the "Mexican text" do not constitute protected opposition to discrimination in the workplace, the University is entitled to judgment under F.R.C.P. 50.

<b>STANDARD OF REVIEW</b>

Under F.R.C.P. 50, the Court should grant a motion for judgment as a matter of law against a party on a claim or an issue if the Court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  F.R.C.P. 50(a).  "Motions under Rule 50 must 'specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.'"  *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1228 (10th Cir. 2000) (citation omitted).  Under Rule 50(b), a party "may file a renewed motion for judgment as a matter of law."

3

**ARGUMENT**

To succeed on his claim of Title VII retaliation, Plaintiff must prove that (1) he engaged in protected opposition to discrimination in the workplace; (2) he suffered an adverse employment action; and (3) there was a causal connection between his protected activity and the adverse employment action. *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002).

This motion is based on Plaintiff's failure to establish the first element, which requires him to prove that he engaged in protected opposition to discrimination in the workplace. To meet his burden, Plaintiff must come forward with legally sufficient evidence that he had a good faith and reasonable belief that the University's conduct violated Title VII. *Crumpacker v. Kansas Dep't of Human Res.*, 338 F.3d 1163, 1171 (10th Cir. 2003).

This "reasonable good-faith belief" test requires a plaintiff to demonstrate that it was objectively reasonable, in light of the facts and record presented, for him to believe that his employer was engaged in unlawful employment practices. *Clark v. Cache Valley Elec. Co.*, 573 F. App'x 693, 701 (10th Cir. 2014) (unpublished) (citation omitted). To determine whether it was objectively reasonable for Plaintiff to have believed that he was opposing discrimination, the Court looks to the underlying substantive law. *Id.*; *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (looking at the underlying substantive law of sexual harassment to evaluate whether the plaintiff's complaint was based on good faith and reasonable belief that the supervisor's and co-worker's comments constituted sexual harassment).

Here, Plaintiff complained of race and national origin discrimination based on the "Mexican text." Discrimination under Title VII is defined as follows:

It shall be an unlawful employment practice for an employer—

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).  At trial, Plaintiff did not present any evidence that would have enabled a reasonable juror to conclude that the text—from Dr. Fiegel to Dr. Acosta—could be construed as affecting the "compensation, terms, conditions, or privileges" of Plaintiff's employment at the University based on his race or national origin.

First, Plaintiff failed to come forward with any evidence that the "Mexican text" was an action by Plaintiff's employer—the University.  And that is required.  Indeed, "[t]he employer must know not only that the employee has opposed *an action of the employer* ..., but that the opposition was based on a belief that *the employer's action* constituted discrimination prohibited by Title VII (here, racial or national-origin discrimination.)"  *Robinson v. Cavalry Portfolio Servs.*, LLC, 365 F. App'x 104, 113 (10th Cir. 2010) (unpublished) (citation omitted, emphasis the Tenth Circuit's).  There was no evidence that the University authorized Dr. Fiegel's "Mexican text," that it was within Dr. Fiegel's job duties to send out such a text, or that the text was even sent from Dr. Fiegel's workplace.  It was a single, isolated text message between two friends.

Second, Plaintiff did not present any evidence to show that he experienced any negative treatment in his employment by the University based on his race or national origin.  "[A]

recurring point in …[Supreme Court jurisprudence] is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Breeden*, 532 U.S. at 271. "Title VII does not create a claim for every employee who complains about the potential for Title VII violations or about other employees' isolated racial slurs." *Robinson*, 365 F. App'x at 112. Instead, Title VII protects an employee who opposes discrimination in the workplace, or who reasonably believes he is opposing such discrimination. *Id.* Here, the single text message is an isolated incident, not an unlawful employment practice.

In *Robinson*, the plaintiff—who was married to an African-American man who also worked for the same employer—reported that during the lunch break, a co-worker used a series of racial slurs, including the "n" word, spoke derogatively about African-Americans, and commented that "he didn't have black in his bloodline because if he did he would be scraping that sh_t off." *Id*. at 108. The plaintiff resigned, but brought suit claiming constructive discharge. The defendant moved for judgment as a matter of law based in part on the plaintiff's failure to come forward with legally sufficient evidence that her complaint about the co-worker's remarks constituted protected activity under Title VII. The district court denied the motion. On appeal, the Tenth Circuit reversed, concluding that the district court erred because "a complaint of a single racist remark by a colleague, without more, is not opposition protected by Title VII." *Id.*

In *Breeden*, the plaintiff argued that she was retaliated against for complaining about an incident with her male supervisor and a male co-worker while reviewing applications for a job opening. 532 U.S. at 269-70. In one applicant's report, the applicant had stated to a co-worker,

"I hear making love to you is like making love to the Grand Canyon." *Id.* at 269.  The supervisor

read the comment aloud, looked at plaintiff, and stated, "I don't know what that means."  The

other male employee replied, "Well, I'll tell you later," and both men laughed.  The plaintiff

complained about the comment and subsequently filed a Title VII retaliation claim, asserting that

she was punished for her complaint.  The Supreme Court held that "no reasonable person could

have believed that the single incident . . . violated Title VII's standard," as that single incident

"cannot remotely be considered 'extremely serious,' as our cases require." *Id* at 270.

Accordingly, the Court held that the plaintiff's complaint about the incident was not protected

activity to support a retaliation claim under Title VII.  *Id.*

More recently, Judge Domenico dismissed a retaliation claim in *Westby v. BKD CPAS &*

*Advisors, LLP*, 2019 WL 2576530, at *1 (D. Colo. June 24, 2019) due to lack of legally

cognizable protected activity.  In that case, after receiving an employment offer but before

starting with the defendant, the plaintiff (a half-Asian, half-Caucasian female) discovered an

offensive Facebook post maintained by a future co-worker, depicting a stick figure of an Asian

woman with slanted eyes, making the "V" sign with both hands, accompanied with text implying

poor English grammar.  *Id.*  The plaintiff exchanged emails with defendant's management for

several weeks complaining about the post.  The defendant eventually revoked the plaintiff's job

offer, stating that her personal approach and communication style was inconsistent with its

expectations.  She sued for retaliation under Title VII.  The court dismissed the claim for failure

to plausibly allege protected activity because, even if the co-worker's Facebook post "was

discriminatory, it was promulgated by a single employee, at a single time, and outside of the

workplace."  The "Court cannot impute [co-worker's] extracurricular prejudice to the company

itself as actionable discrimination. . . . Offensive, inappropriate, or uncivil as [co-worker's] post may have been, complaining about a single post by a prospective coworker left online at some unspecified time and not directed at any individual was not equivalent to opposing a discriminatory practice by [the employer]." *Id.* at *6.

Likewise, Plaintiff here failed to come forward with legally sufficient evidence that the University discriminated against him through Dr. Fiegel's private text to his friend.  There was no evidence of other texts or comments referencing a "spot for a Mexican."  There was no evidence that the text was even sent to Plaintiff.  "[A] plaintiff's belief ... is not reasonable simply because he or she complains of something that appears to be discrimination in some form."  *Cache Valley Elec.*, 573 F. App'x at 701 (citing *Kelly v. Shapiro & Associates*, 716 F.3d 10 (2d Cir. 2013)).  Here, the text message is just that.  It's not legally cognizable discrimination.  *See, e.g., Fergus v. Faith Home Healthcare, Inc.*, No. 18-CV-2330-JWL, 2019 WL 3817961, at *8 (D. Kan. Aug. 14, 2019) (concluding it was not reasonable to believe that a supervisor's comment to plaintiff's co-worker "don't think you're getting the smaller office because you're black" was employment discrimination protected by Title VII).

Under *Breeden*, *Robinson*, and *Cache Valley*, Plaintiff's complaint about a single inappropriate text message sent by Dr. Fiegel to an outside physician does not constitute protected activity to support a Title VII retaliation claim.  Plaintiff abruptly quit the APS, and the Chair became upset with him as a result.  Plaintiff complained about the Chair's reaction to him quitting the APS[1] and about the "Mexican text."  The complaint about the "Mexican text" is not

---

[1] Even assuming that the Chair knew about and retaliated against Plaintiff for his complaint about her reaction to how he quit the APS, (although no such evidence was presented at trial), such purported retaliation is also not a legally cognizable cause of action under Title VII.  *See*

legally cognizable protected activity because the text, while offensive, was not employment

discrimination and it was objectively unreasonable to believe that it was.  No reasonable jury

could have found that Plaintiff's complaint about the text confronted a discriminatory

employment practice.

Accordingly, the University is entitled to judgment as a matter of law.

**DATED**: January 17, 2020.

Respectfully submitted,

*s/ David P. Temple*
David P. Temple
Hermine Kallman
University of Colorado
Office of University Counsel
1800 Grant Street, Suite 700
Denver, CO 80203
Tel: 303-860-5691
Fax: 303-860-5650
David.Temple@cu.edu
Hermine.Kallman@cu.edu
*Attorneys for Defendant*

---

*Cache Valley Elec. Co.*, 573 F. App'x at 702 ("[A]n employer could admit having fired an employee for complaining about most anything—from the size of his office to the food in the company cafeteria—but this would not be direct evidence of retaliation under Title VII, unless the employee's complaint concerned discrimination, or the employee at least reasonably in good faith believed that it did.").

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2020, I electronically filed the foregoing with the

Court's electronic filing system (CM/ECF) which will automatically cause notification to be sent

to the following counsel of record:


Charlotte N. Sweeney
Ariel B. DeFazio
Sweeney & Bechtold, LLC
650 S. Cherry Street, Suite 700
Denver, CO 80246
Telephone (303) 865-3733
Fax: (303) 865-3738
E-mail: cnsweeney@sweeneybechtold.com
E-mail: abdefazio@sweeneybechtold.com
*Attorneys for Plaintiff*

*s/ Linda Ruth Carter*
Linda Ruth Carter, Paralegal
