IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:18-cv-01178-RBJ

JEFFREY GONZALES,

    Plaintiff,

v.

UNIVERSITY OF COLORADO, through its Board, THE REGENTS OF THE UNIVERSITY OF COLORADO, a body corporate,

    Defendant.

## ORDER ON MOTION FOR REINSTATEMENT

On December 20, 2019 a jury found that the University of Colorado retaliated against Dr. Gonzales for engaging in protected activity under Title VII and awarded him $500,000 in economic damages and $180,000 in non-economic damages. ECF No. 70 (jury verdict, redacted). On January 21, 2020 Dr. Gonzales moved for reinstatement and other equitable relief. Defendant opposes the motion. For the reasons provided in this order, the motion is granted in part and denied in part.

## BACKGROUND

Dr. Gonzales, an anesthesiologist, was an Assistant Professor in the Department of Anesthesiology of the University of Colorado's School of Medicine when he was terminated on June 3, 2016. He is an Hispanic individual of Mexican descent. He claimed in this lawsuit that defendant retaliated against him by denying promotions and ultimately terminating him after he expressed concerns about national origin discrimination in the Department of Anesthesiology. The defendant claimed that the adverse personnel actions affecting Dr. Gonzales had nothing to

1

do with his national origin, and that he was terminated because of a complaint lodged against him by one of the anesthesiology residents with whom Dr. Gonzales had worked. Dr. Gonzales claimed that the given reason for his termination was pretextual. The jury agreed with Dr. Gonzales.

**Motion.**

In his motion for reinstatement Dr. Gonzales requests reinstatement to the position of Associate Professor – a position he had not yet attained but which plaintiff argues he likely would have attained had it not been for the unlawful conduct. ECF No. 73 at 3-5. He also asks the Court to invoke its broad equitable powers and to order changes to the University's EEO policies, i.e.,

- To mandate "that any report of discrimination by an employee to HR, the Office of Professionalism, or any other office be immediately directed to the Office of Equity, and that legitimate reports of discrimination and retaliation be promptly subjected to some level of scrutiny and/or investigation by the Office of Equity." *Id.* at 7.

- To clarify "for its employees – both managerial and otherwise – the roles of the Office of Equity, HR, and the Office of Professionalism and to communicate the way in which its employees should report concerns of discrimination and retaliation through regular trainings and postings in conspicuous locations at the worksite." *Id.* at 7-8.

- To either terminate the Chair of the Department of Anesthesiology or require the Chair "to undergo extensive training that also involves having her performance evaluated accordingly for some period of time" such as "a 360° Survey, EEO training, and development system offered through the PULSE Program, which is designed to help

physicians 'develop more effective professionalism, interpersonal and communication skills' through training and coaching . . . ." *Id.* at 8-9.

**Response**.

In its response defendant characterizes Dr. Gonzales' position as refusing reinstatement unless he is reinstated as an Associate Professor. Defendant claims that it unconditionally offered Dr. Gonzales reinstatement as an Assistant Professor, and because he declined the offer, he has waived reinstatement. ECF No. 92 at 2-5. Alternatively, if the Court determines that Dr. Gonzales has not waived reinstatement, the Court should not mandate that he be made an Associate Professor, as that would impermissibly intrude on the University's academic judgment and would be speculative as to whether Dr. Gonzales would have achieved that promotion. *Id.* at 5-10. Finally, the University argues that it already has in place sufficient EEO policies, and that the Court does not have the authority to have the Chair terminated or disciplined. *Id.* at 13-14.

**Reply**.

Dr. Gonzales replies that his glowing annual reviews and comments that he was "ready for promotion" indicate that he likely would have been made an Associate Professor had he not been terminated. ECF No. 99 at 2-3. Thus, it would be inappropriate to reinstate him as an Assistant Professor. *Id.* at 3-6. He denies that he waived reinstatement. *Id.* at 6-9. He disputes that the Court's advancing him to an Associate Professor position would impermissibly interfere with the Department's academic judgment. *Id.* at 9-10. Finally, he argues that the Department's and, in particular, the Chair's conduct, as elucidated during the trial, justify the other equitable relief he seeks. *Id.* at 10-12.

## ANALYSIS AND CONCLUSIONS

First, I find that Dr. Gonzales has not waived reinstatement. Although he requested reinstatement as an Associate Professor, he has not stated that he would not accept reinstatement on any other basis if ordered by the Court. Further, contrary to defendant's response, he was not "unconditionally offered" reinstatement. To be sure, the offer included reinstatement as an Assistant Professor – the position he previously held. However, the offer also included that his position would be at UCHealth Highlands Ranch Hospital, reporting to the Vice Chair of Community Clinical Practice. Although Dr. Gonzales is wary of reporting to that individual based on the latter's comments in the past, I do not have to wade into where he should be located or to whom he should report in order to find that the offer as extended was not "unconditional." Frankly, the offer has the appearance of being a carefully crafted but poorly advised effort to make Dr. Gonzales an offer he wouldn't accept in order to set up the argument that he had waived reinstatement.

Regarding promotion to Associate Professor, I am reluctant at this time to insert myself into what ideally should be the business of the Department of Anesthesiology. That said, I recognize the Court's authority, *see, e.g.*, *Fitzgerald v. Sirloin Stockade,* 624 F.2d 945, 957 (10th Cir. 1980), and I am not persuaded that doing so would be an undue intrusion on the Department's "academic judgment." The evidence presented at trial indicates that the "academic" piece was addressed by Dr. Gonzales's excellent annual reviews during his employment, outstanding evaluations from nearly all of the anesthesiology residents with whom he worked, and the fact that he had been deemed "ready for promotion" as early as January 2015.

*See* ECF No. 73 at 3-4 (citing Trial Exs. 4, 6 and 7). It is the "judgment" piece about which I have serious questions based on the evidence at trial.

In particular, I am concerned that the Chair of the Department of Anesthesiology, Dr. Vesna Todorovic, might not fairly and objectively act on Dr. Gonzales's desire for promotion. Dr. Todorovic claimed that her decision to terminate him was based entirely on an incident involving Dr. Gonzales and a resident, Dr. Nathaniel Brown. The jury implicitly found that this was a pretext for unlawful retaliation. I found Dr. Brown's testimony about the incident and his reaction to it to be incredible, and I am astonished that a department chair would give his story the credit or weight that she allegedly gave it. In addition, the evidence was that Dr. Todorovic engaged in discriminatory conduct against two other professionals in the department – Dr. Susan Mandell, a tenured professor of anesthesiology who is internationally acclaimed in the field of liver transplantation, and Stephanie Strauss, an anesthesiologist assistant in the Department. I found the testimony of Dr. Mandell and Ms. Strauss, in contrast with the testimony of Dr. Todorovic, to be entirely credible. Even if I were to give Dr. Todorovic the benefit of the doubt in terms of good faith, she demonstrated a woeful lack of effective leadership.

Like Dr. Gonzales' promotion to Associate Professor, modifications to the Department's EEO procedures and discipline of the Department Chair are matters that ideally should be dealt with by the School of Medicine rather than a court. However, I must say that the evidence presented at the trial of this case and the positions it is now taking on Dr. Gonzales's motion for reinstatement suggest that the defendant still does not "get it." The evidence showed that the response to claims of discriminatory and retaliatory conduct within the Department was seriously lacking. The avenues for reporting claims of discrimination, including Human Resources, the

Office of Equity, and the Office of Professionalism, are duplicative and ineffectual. This was true not just vis-à-vis Dr. Gonzales but for Dr. Mandel, Ms. Strauss, and presumably others.

In short, in the view of this Court, instead of stubborn resistance and excuses, it is time for the leadership of the School of Medicine of the University of Colorado to instigate a thorough and objective investigation of its EEO policies and procedures; and of the leadership in the Department of Anesthesiology; and of the Department's treatment of Dr. Gonzales upon his reinstatement. I will retain jurisdiction to consider additional equitable relief if necessary.

**ORDER**

Plaintiff's motion for reinstatement, ECF No. 73, is GRANTED IN PART AND DENIED IN PART. Dr. Gonzales shall immediately be reinstated as an Assistant Professor of Anesthesiology in the University of Colorado School of Medicine's Department of Anesthesiology, and he will be paid additional back pay and benefits from December 21, 2019 to the date of reinstatement. The Department shall address his request for promotion to the position of Associate Professor with all due speed and in a fair and objective manner. Defendant may not permit Dr. Todorovic's approval to be a necessary condition for his promotion to the position of Associate Professor. The remainder of the motion is denied without prejudice. The Court orders the parties to update the Court with a status report no later than 45 days after the date of this order.

DATED this 19th day of March, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge